# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **JEFFERY GETER,**<br><br>*Plaintiff,*<br><br>v.<br><br>**BALDWIN STATE PRISON,** *et al.*,<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:16-cv-00444-TES-CHW** |

## ORDER

Defendant Dr. Ike Akunwanne ("Defendant") has filed a Motion to Dismiss [Doc. 45] Plaintiff's Recast Complaint [Doc. 10] based on Plaintiff's alleged failure to comply with the Georgia Department of Corrections Standard Operating Procedures' single-issue rule.[1] As per his usual fashion, the United States Magistrate Judge has written another excellent and well-reasoned Recommendation [Doc. 71]. In the Recommendation, the Magistrate Judge recommends that the Court deny Defendant's Motion to Dismiss [Doc. 45] asserting that Plaintiff failed to properly exhaust all administrative remedies.

## INTRODUCTION

The Magistrate Judge agrees that "Plaintiff failed to comply with the '[single-issue]' rule" and "if the [single-issue] rule governs, then Plaintiff failed to properly

---

[1] S.O.P. IIB05-0001(VI)(D)(2) states, "The complaint on [a] Grievance Form must be a single issue/incident." [Doc. 45-2, at 18].

exhaust his administrative remedies[]"; yet, he nonetheless recommends against dismissal. [Doc. 71, at 5, 7]. Specifically, the Magistrate Judge relies on *Ross v. Blake*, 136 S. Ct. 1850 (2016), and details his legitimate concerns about whether "Plaintiff's deficiencies in mental capacity made knowledge of the grievance procedure—including the [single-issue] rule—impossible, and therefore made the grievance system effectively unavailable to Plaintiff." [*Id*. at 5, 6]. The Magistrate Judge found that Defendant failed to submit sufficient evidence that "the administrative grievance process was 'available' to Plaintiff, given Plaintiff's alleged and apparent deficiencies in mental capacity." [*Id*. at 7]. Additionally, the Magistrate Judge concluded that if "Plaintiff received assistance [from a prison employee] in filing grievance number 218930" and that assistance led to "misleading" information then "arguably, the grievance system was not available to Plaintiff." [*Id.*].

Defendant filed two specific objections to the Magistrate Judge's recommendation that his Motion to Dismiss [Doc. 45] should be denied. *See* [Doc. 73, at 3-6]. As an initial matter, Defendant objects to the Magistrate Judge's proposition that Defendant failed to offer any "rebuttal argument . . . suggesting that Plaintiff is not so mentally incapacitated as to render the grievance procedure unavailable." [Doc. 71, at 6]; *see also* [Doc. 73, at 4]. Defendant argues that this proposition is both "inequitable and procedurally improper" when Plaintiff never raised availability as an issue, and further contends that he "would not have been placed on notice by [Plaintiff's] mere allegation of mental defect" given

2

that mental deficiency is not one of the three bases of unavailability under *Ross*. [Doc. 73, at 4].

First, Defendant argues that he should not have to "address whether Plaintiff's alleged mental deficiencies made the grievance process 'unavailable' under *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)." [Doc. 73, at 2]. Second, Defendant avers that he should not have to "address whether changed handwriting between two versions of Plaintiff's grievance suggests he was assisted by staff and, if so, whether he received misleading assistance as to the requirements of the grievance process." [*Id.*]. In light of these objections, "[a] judge of the court shall make a de novo determination of those . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

However, after the Magistrate Judge issued his Recommendation, the Eleventh Circuit decided *Whatley v. Ware SP Warden (Whatley II)*, No. 16-16465, 2018 WL 3616779 (11th Cir. July 30, 2018). The Magistrate Judge did not have the opportunity to apply *Whatley II*. The District Court, now having the benefit of *Whatley II*, issues the following Order sustaining Defendant's objections and **GRANTING** Defendant's Motion to Dismiss [Doc. 45].

## FACTUAL BACKGROUND

Plaintiff Jeffery Geter describes himself as a mental health inmate with "A [sic] 8th Grade Special Education In Schooling." [Doc. 64, at 5]. Plaintiff makes a wide range of

allegations in his initial filings against fellow inmates and various "John Doe"[2] defendants;[3] including rape, violence, and theft of personal property. [Doc. 16, at 1-2]; *see also* [Doc. 10-2, at 7]. At the preliminary stages of this case, Plaintiff filed, in his words, a "No Infromil [sic]" grievance.[4] [Doc. 10-1, at 2]. When describing the date and description of the incident (grievance form dated April 22, 2016), Plaintiff lists two occasions of theft: one involving, presumably, the magnetic strip from the back of a card, and the other involving a book. *See* [*id.*]. On a second, but undated[5] grievance, Plaintiff states that "someone is tacking [sic] my money" and briefly mentions a need for medical treatment. [*Id.* at 4]. In what appears to be Plaintiff's third "No Inframil [sic]" grievance form [Doc. 10-1, at 5], dated May 7, 2016, he argues that "6.19373" pounds "is not 6.2 Pound's [sic]," states "I need a room by mysilf [sic]," reiterates the incident in which someone allegedly

---

[2] The caption on page one of Plaintiff's Motion to Amend Complaint or Alter Complaint [Doc. 16] states that there are three "John Doe" defendants. [Doc. 16, at 1 ("John Doe's [sic] 3 of them")]. However, on page two, when presenting the rape allegations, Plaintiff states that "3 or 4 inmant's [sic] Rape me." [Doc. 16, at 2]. The Recommendation [Doc. 71], citing Plaintiff's Motion to Amend Complaint or Alter Complaint [Doc. 16, at 2], states that there are "four 'John Doe' defendants" seemingly in reference to the Questionnaire for the Prisoners Proceeding Pro Se Under 42 U.S.C. § 1983's [Doc. 10] case caption. [Doc. 71, at 1]; *see also*, [Doc. 10, at 1 ("John Doe-4 of them")]. In light of this ambiguity, as to how many John Doe defendants Plaintiff actually names, the Court notes that Plaintiff brought claims against "various" John Doe defendants.

[3] The Plaintiff's Complaint is almost completely indecipherable and is what could be graciously described as "rambling."

[4] Just to the right of the heading on the "No Infromil [sic] Confidential Offender Grievance From" Plaintiff states that "[t]his" grievance "is the 2 one." [Doc. 10-1, at 1].

[5] In the upper right-hand corner of this document, Plaintiff wrote "4-30-[]," however, the markings following the "4-30" notation are impossible to discern.

removed the magnetic strip from the back of his card, and lastly states that he "need[s] all medcal [sic] help [he] can get." [Doc. 10-1, at 5].

In a previous Order [Doc. 33], the Magistrate Judge discussed the details contained in Plaintiff's grievances and filings and explained that fellow inmates are ordinarily not proper defendants in a section 1983 lawsuit. *See* [Doc. 33, at 10-11]; *see also* [Docs. 10-1, 16]. Additionally, the Magistrate Judge explained the stringent standard for fictitious party pleading, and determined that Plaintiff's allegations, to the extent they were alleged against fellow inmates and even unidentified officers, were not sufficiently specific to permit the claims asserted against those various John Doe defendants to proceed. *See* [Doc. 33, at 11-13]; *see also* [Doc. 71, at 1].

However, after deciphering Plaintiff's pleadings, the Magistrate Judge allowed Plaintiff to proceed on his Eighth Amendment deliberate indifference to serious medical needs[6] claim against Defendants Dr. Ike Akunwanne and Dr. King.[7] [Doc. 33, at 13-14].

---

[6] Plaintiff alleges that these doctors failed to provide him with necessary pain medication and follow-up treatment relating to the alleged removal of a brain tumor. [Doc. 33, at 7, 9].

[7] Defendant King has not been served with process in this case. In fact, during a service attempt by the United States Marshals Service, "Baldwin State Prison reported that they have never had any employee with this name." [Doc. 58]. In a subsequent Order [Doc. 72], the Magistrate Judge directed Plaintiff to "remedy the apparent service defect" as to Dr. King "by providing the Court with a service address for this Defendant so that the Court may continue its efforts to effect service on Plaintiff's behalf." [Doc. 72, at 2]. In response to the Magistrate Judge's directions, Plaintiff filed a "Motion's [sic] For Summons" [Doc. 74]. In this filing, Plaintiff states that Dr. King's address is "Atlanta Georgia Medical Center on 3 or 4 Floor." [Doc. 74, at 1].

As the only remaining defendant served with process, Defendant Dr. Ike Akunwanne filed a Motion to Dismiss [Doc. 45].

Defendant moves to dismiss Plaintiff's Recast Complaint [Doc. 10] based upon Plaintiff's alleged failure to exhaust his administrative remedies before filing his lawsuit in federal court. The Prison Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Defendant's dismissal motion is based on Plaintiff's alleged failure to comply with the Georgia Department of Corrections Standard Operating Procedures' requirement that the "complaint on the Grievance Form [] be a single issue/incident." [Doc. 45-2, at 18].[8] It is apparent that Plaintiff, on at least two occasions, failed to comply with this single-issue rule. As stated above, Plaintiff mentions in one grievance that "[S]omeone got my Scrip [sic] off of my card," and "Someone got A Book that has my name on it." [Doc. 10-1, at 2]. In another he states that "Someone is tacking [sic] my money," and that he needs "[m]edical treatment." [*Id.* at 4]. On what appears to be a third grievance form, Plaintiff argues about the weight of a package, states that he needs a room to himself, and again stresses his need for medical care. *See* [*id.* at 5] i*n connection with* [Doc. 45-2, at 18 ("The complaint on the Grievance Form must be a single issue/incident.")].

---

[8] S.O.P. IIB05-0001(VI)(D)(2).

The Georgia Department of Corrections Standard Operating Procedures applies to "[a]ll offenders committed to the Department of Corrections in state prisons, private prisons, county correctional facilities, and transitional centers." [Doc. 45-2, at 11]. According to the Standard Operating Procedures, "The Grievance procedure has two (2) Steps: 'Step 1: Original Grievance' [and] 'Step 2: Central Office Appeal.'" [*Id.* at 18]. First, the inmate must file an "Original Grievance" in which the "offender's complaint and requested relief must be stated legibly and in writing in the space provided on the Grievance Form and on one additional page attached to the Grievance Form." [*Id.*]. This "Grievance Form" must be submitted "no later than 10 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." [*Id.* at 19]. This grievance must relate only to a "single issue/incident"—a provision of the Standard Operating Procedure critical to Defendant's arguments. [*Id.* at 18].

After filing, the grievance is "screened" by the Grievance Coordinator "to determine whether to accept it or to recommend that the Warden reject it." [*Id.* at 19]. If the Grievance Coordinator determines that the Warden should reject the grievance, the Grievance Coordinator must make that recommendation to the Warden for the Warden's review and decision. [Doc. 45-2, at 19]. In the event the Warden rejects the grievance, the "offender may appeal the Warden's rejection decision to the Central Office." [*Id.* at 20]. However, if the Warden accepts the grievance, the Warden sends the grievance to the Grievance Coordinator for processing. [*Id.*]. Then, the Grievance Coordinator

7

appoints an appropriate staff member to investigate the offender's complaint. [*Id.*]. Upon completing the investigation, the staff member writes a complete report and submits it to the Grievance Coordinator. [*Id.*]. After reviewing this report, the Grievance Coordinator submits a recommended response to the Warden who then issues a written decision to the offender's counselor. [*Id.* at 21]. Finally, the counselor gives the Warden's decision to the offender and the offender signs[9] an acknowledgment of receipt. [Doc. 45-2, at 21].

## DISCUSSION

A. <u>Procedural Rules Under the Georgia Department of Corrections Standard Operating Procedures</u>

Interestingly, the Warden's/Superintendent's Grievance Response indisputably indicates that "[Plaintiff] is being seen by medical and receiving medical care. Issue addressed." [*Id.* at 59]. Thus, the Warden clearly denied Plaintiff's grievance on substantive grounds, not procedural grounds. However, the Central Office Appeal Response states:

> A member of my staff has reviewed your grievance. This grievance revealed that you failed to follow the proper procedure for filing the formal grievance. Policy states that the complaint on the grievance form must be a single issue/incident. You have noted more than one issue. *This grievance was rejected at the institutional level in accordance with policy*; therefore, this grievance is denied.

[Doc. 10-1, at 9] (emphasis added).

---

[9] The Court notes that Plaintiff apparently "refuse[d] to sign" the Warden's/Superintendent's Grievance Response regarding Grievance Number 218930. [Doc. 45-2, at 59].

8

The emphasized portion of the Central Office Appeal Response [Doc. 10-1, at 9] above is confusing in that it could be read two ways: that the Warden denied his grievance on procedural grounds for not following the policy mandating only a single issue per grievance or that the Warden denied his grievance on the substantive grounds that Plaintiff was receiving the medical care to which he was entitled. This Appeal Response would be somewhat problematic but for the Eleventh Circuit's recent clarification and guidance on this very issue. *See generally Whatley II*, No. 16-16465, 2018 WL 3616779 (11th Cir. July 30, 2018).

When it comes to the issue of exhaustion, it is error for a district court to "enforce[] a procedural bar that the prison itself may have waived." *Whatley II*, 2018 WL 3616779, at *6 (quoting *Whatley v. Warden, Ware State Prison (Whatley I)*, 802 F.3d 1205, 1213 (11th Cir. 2015)). In *Whatley I*, the Eleventh Circuit announced for the first time that "a prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits. . . . District courts may not enforce a prison's procedural rule to find lack of exhaustion after the prison itself declined to enforce the rule." *Id.*

The prison's only saving grace, in this case, is the fact that the Georgia Department of Corrections—at the final administrative level—"*explicitly* rel[ied] on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance." *Id.* at *8. *Whatley I* requires waiver of the procedural defect at the "final stage" of the grievance process. *Id.* (quoting *Glenn v. Smith*, 706 F. App'x 561, 564 (11th Cir.

9

2017)). The institutional level, in this case, clearly addressed Plaintiff's grievances on a substantive basis and waived (at the initial stage) Plaintiff's procedural defect.

Thus, unless the prison "affirmatively invoke[d] the procedural rule at the administrative level" regarding single-issue grievances, the prison would have undeniably waived Plaintiff's procedural defect. *Id.* at *10. In that event, Plaintiff would have been deemed to have exhausted his administrative remedies because the prison considered the substance of Plaintiff's grievance at the institutional level. *See* [Doc. 45-2, at 59 ("Inmate is being seen by medical care. Issue addressed.")]; *see also Whatley II*, No. 16-16465, 2018 WL 3616779 at *10 (citing *Hammett v. Cofiled*, 681 F.3d 945, 948 (8th Cir. 2012)). However, because the prison chose to enforce its procedural rules, at the *final* administrative level of the Georgia Department of Corrections' grievance procedure, the Court finds that Plaintiff has not properly exhausted his administrative remedies. [*Id.*]. Therefore, his lawsuit is not properly before the Court and it must be dismissed.

However, the analysis does not end. The Magistrate Judge found that Plaintiff's mental limitations made it so that he could not comply with the single-issue rule; therefore, his administrative remedies were unavailable. *See* [Doc. 73, at 5-7]. The Court now turns to consider whether the Plaintiff's alleged mental deficiencies could make the grievance process "unavailable" to him under *Ross*.

B.  Proper Exhaustion of Available Administrative Remedies as Prescribed by *Ross v. Blake*

The objections raised by Defendant address the Magistrate Judge's legitimate concerns that Plaintiff's alleged deficiencies in mental capacity may have made Plaintiff's comprehension of the grievance procedure—specifically the single-issue rule—impossible, thus rendering the grievance system effectively unavailable to Plaintiff. *See* [Doc. 73, at 2] *in connection with* [Doc. 71, at 5, 6]. Defendant contends that Plaintiff never asserted that the prison's administrative remedies were unavailable to him, as contemplated by *Ross*. *See* [Doc. 73, at 3]. Specifically, Defendant argues that aside from Plaintiff's remarks concerning his lack of education and self-described mental health deficiencies, Plaintiff has not asserted that any mental defect prevented[10] him from complying with the single-issue rule. [*Id.*]. Second, Defendant argues that lack of mental capacity is not one of the three bases of unavailability that the United States Supreme Court expressly outlined in *Ross*.

The Supreme Court has repeatedly observed that the language regarding exhaustion in § 1997e(a) is "mandatory." *Ross*, 136 S. Ct. at 1856 (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).[11] Thus, "that mandatory language means that a court may not

---

[10] Plaintiff does however state that "[he] has A [sic] legitimate reason involving unusual circumstances that Prevented [him] from timely doing some of his Law work." [Doc. 67, at 2]; *see also* [Doc. 69, at 2]. The Court cannot conclude that Plaintiff's excuse, as to *timeliness* in completion of his legal work, has any bearing on his ability to follow the single-issue rule.

[11] "By referring to 'such administrative remedies as are available,' § 1997e(a)'s text strongly suggests 'exhausted' means what it means in administrative law." *Woodford v. Ngo*, 584 U.S. 81, 81 (2006).

excuse a failure to exhaust, even to take ["special circumstances"] into account." *Id.* (quoting *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' [in the PLRA] normally creates an obligation impervious to judicial discretion")). Further, *Ross* unequivocally states that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Id.* at 1862. "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id*. Despite the ban on special circumstance exceptions, the PLRA's own, textual exception to mandatory exhaustion hinges on the "availab[ility]" of administrative remedies. 42 U.S.C. § 1997e(a). A prisoner is thus required to exhaust only those grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1853 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

To comprehensively present and answer the unique issue before it, the Court begins its analysis by applying the Eleventh Circuit's two-step process for deciding a motion to dismiss based upon a failure to exhaust administrative remedies. *See generally Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). As a general matter, a defendant bears

---

Administrative law requires proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so *properly*." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

12

the burden of proving that the plaintiff[12] failed to exhaust his available administrative remedies. *Id.* at 1083. Under *Turner*, a reviewing court first:

> [L]ooks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Id.* at 1082. Second, after assuming the plaintiff's allegations are true, if the complaint is not dismissed under step one, then the reviewing court:

> [M]ust make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082-83 (citing *Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008)). Although non-jurisdictional in nature, the defense of failure to properly exhaust available administrative remedies under the PLRA is treated as a matter in abatement and is therefore equivalent to a "defense for lack of jurisdiction." *Id.* at 1082 (citing *Bryant*, 530 F.3d at 1374).

After a defendant has met his burden by showing that the prisoner failed to properly exhaust his available administrative remedies, there are three ways a prisoner can show that he could not properly exhaust because the administrative remedies were

---

[12] "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Turner*, 541 F.3d. at 1083 (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

unavailable. These three ways involve circumstances in which an administrative remedy, although in existence, is not capable of use to obtain relief. *Ross*, 136 S. Ct. at 1853.

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.*, some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Id.* at 1853-54. Notwithstanding these three circumstances, the burden, as stated above, ultimately rests with a defendant to prove *availability*. *Turner*, 541 F.3d at 1083.

The Magistrate Judge correctly accepted Plaintiff's allegations of mental deficiency as true; however, it appears that the Recommendation rests heavily on Plaintiff's *subjective* abilities, in particular, his specific mental deficiencies. *See* [Doc. 71, at 6 ("Plaintiff was told by Dr[.] King and Dr[.] Akunwann[e] he [is] disable[d] for life" and "Plaintiff is a mantel [sic] helth [sic] inmant [sic] [with] an 8th grade special education")]; *see also* [Doc. 68, at 3; Doc. 59, at 3]; *and Turner*, 541 F.3d at 1082. Now, under *Turner's* second step, the Court must make specific findings in order to resolve any disputed factual issues related to exhaustion. 541 F.3d at 1082.

As previously mentioned, the Recommendation states that "the Defendants have not offered any rebuttal argument or evidence suggesting that Plaintiff is not so mentally incapacitated as to render the grievance procedure unavailable." [Doc. 71, at 6]. The Magistrate Judge reached this conclusion based on the portion of *Ross* that says, "[w]hen

a remedy is . . . essentially 'unknowable' [—*so that no ordinary prisoner can make sense of what it demands*—] then it is also unavailable." [Doc. 71, at 6 (quoting *Ross*, 136 S. Ct. at 1859) (emphasis added)].

A reasonable reading of this portion of the Recommendation leads to the conclusion that Defendant would bear the burden of proving that Plaintiff, with his specific assumed mental limitations, was subjectively capable of following the proper grievance procedure. This reasoning—clearly a subjective standard specific to this Plaintiff—requires Defendant to show that the grievance process in this case was unknowable, and thus unavailable, to this particular plaintiff based on his unique circumstances, instead of to the "ordinary prisoner." *Ross*, 136 S. Ct. at 1859. Thus, in the Court's opinion, subjective considerations of a prisoner's assumed particular mental deficiencies effectively creates a "fourth avenue" to show a prison's grievance procedure was unavailable under the PLRA.

To do so would effectively carve out a "special circumstance" for a particular plaintiff that the United States Supreme Court unequivocally rejected in *Ross*. There, the United States Supreme Court rejected the Fourth Circuit's reasoning that "the PLRA's 'exhaustion requirement is not absolute,'" and held that the PLRA may not include discretionary "judge-made exceptions." *Ross*, 136 S. Ct. at 1856. Specifically, the Supreme Court stated, "the statutory text [of the PLRA] and history alike foreclose the Fourth Circuit's adoption of a 'special circumstance' exception." *Id.* "Time and again, [the

15

Supreme Court] has rejected every attempt to deviate from the PLRA's textual mandate," and although the application of the objective standard in *Ross* unavoidably leads to the arguably harsh result that Plaintiff failed to exhaust his available administrative remedies, the Court is bound to follow United States Supreme Court precedent, exactly and precisely as the Supreme Court decided.

As shown above, *Ross* mandates that reviewing courts determine whether an "ordinary prisoner [could] make sense of what" the specific rule or procedure at issue "demands." *Id.* at 1859. In this case, the procedural rule "demands" that a grievance form contain only a single issue. The Court finds that the ordinary prisoner can readily understand that he must only list one issue per grievance. Thus, the Court concludes that the administrative remedies were available to Plaintiff and that Plaintiff—in failing to comply with the demands of the grievance process—failed to properly exhaust those remedies.

However, out of an abundance of caution, and in the event that the Court must take Plaintiff's specific mental limitations into account, the Court finds that the Plaintiff's complaint must still be dismissed. In his Motion for Objection and In Response to Defendant's Objections [Doc. 75], Plaintiff once again tells the Court that "Plaintiff has Been Mental Health (3) For About 18 years." [Doc. 75, at 4]. While the Court must accept as true Plaintiff's allegations of mental deficiencies and does so for argument's sake to satisfy *Turner's* first step, the Court must now ask whether Defendant offered enough

16

evidence to show that Plaintiff was not incapacitated or that the three circumstances discussed in *Ross* are not present in this case in order to prevent Plaintiff from complying with the single-issue rule.

The specific finding of this Court is that Plaintiff, despite his eighth-grade special education, could have subjectively understood the single-issue rule mandated by the grievance procedure. This finding is based on the fact that Plaintiff filed a lawsuit; complied with the guidelines for proceeding *in forma pauperis*; read and understood the Federal Rules of Civil Procedure (which this Court admits are not easily understood by some practiced attorneys); sought leave to amend his complaint; followed the direction of the Magistrate Judge to recast his complaint; routinely inquired about the status of his case; and properly filed a response to Defendant's objections to the Recommendation.

Moreover, to the extent Plaintiff received assistance[13] in completing his grievance, Plaintiff never alleged that anyone, prison official or otherwise, ever gave him improper advice regarding the filing of his grievance, did anything wrong to prevent proper completion of the form, or otherwise thwarted its physical filing. To require the Defendant to preemptively account for circumstances never raised by Plaintiff—that Plaintiff was not competent to understand the grievance procedure before him or that someone completed Plaintiff's grievance request incorrectly so that it would be

---

[13] Institutional staff members are permitted to "assist offenders who need special help filling out the grievance forms (*i.e.*, due to language barriers, illiteracy, or physical or mental disability) upon request." [Doc. 45-2, at 15].

improperly filed—falls outside *Ross's* unavailability protection. For this, as well as the reasons discussed above, the District Court respectfully disagrees with the manner in which the Magistrate Judge applied *Ross* and sustains the objections made by Defendant.

## CONCLUSION

In light of the foregoing, the Court finds that the Georgia Department of Corrections, at the final, administrative level, preserved its procedural rules for grievance filings. Plaintiff failed to comply with the single-issue rule and therefore failed to properly exhaust his available administrative remedies before filing his lawsuit in federal court. Upon a review of Defendant's Objection [Doc. 73] and the relevant legal authorities, the Court **SUSTAINS** Defendant's objections and **DECLINES** to accept the United States Magistrate Judge's Recommendation [Doc. 71]. Accordingly, the Court **GRANTS** Defendant Dr. Ike Akunwanne's Motion to Dismiss [Doc. 45].

**SO ORDERED**, this 16th day of August, 2018.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**