IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JEFFERY GETER, | : |
| Plaintiff, | : |
| v. | : Case No. 5:16-cv-444-TES-CHW |
| DR AKUNWANNE, | : |
| Defendant. | : |

## ORDER

Before the Court is Defendant Akunwanne's second motion to dismiss this case based on Plaintiff Jeffrey Geter's failure to participate in his deposition. (Doc. 162). For the reasons discussed below, the Defendant's motion is **GRANTED**, and this case is hereby **DISMISSED without prejudice**.

## BACKGROUND

**(1)   Prior District Court Proceedings**

This nearly six-year old judicial proceeding began in October 2016, when the Court received from Plaintiff a witness statement declaring that "I like to of Die[d] on 8-30-15" because "I had a surgery on my brain and[d] Dr King had to [take] some of my brain out." (Doc. 1, p. 1). In a supplemental filing, Plaintiff reiterated allegations relating to a possible craniotomy procedure (Doc. 10-2, p. 2). Plaintiff additionally informed the Court that an "officer [or] an inma[te] was trying to put a peye in my pienes" [sic]. (Doc. 10-2, p. 3). Plaintiff also described being "hit on my head with a lock," having "[acid] an[d] hot [water

1

poured] in my eyes," having "inma[tes] put pills in my coffee to make me go to sleep," and being "rape[d] by 3 or 4 inma[tes]." (Doc. 10-2, p. 5).

In addition to a variety of filings in which Plaintiff advanced factual allegations, Plaintiff also filed motions for polygraph tests of himself and others (Docs. 19, 25), motions for the appointment of counsel (Docs. 4, 9, 22, 26), motions for the issuance of a summons (Docs. 14, 15, 31), and a premature request for the production of documents (Doc. 23). These filings suggest both that Plaintiff has a rudimentary understanding of the mechanics of civil litigation, and that initially at least, Plaintiff had an interest in litigating this case.

On review of Plaintiff's allegations under several screening authorities,[1] a U.S. Magistrate Judge determined that Plaintiff arguably stated an Eighth Amendment claim of deliberate indifference to medical needs against two prison physicians, only one of whom remains as a party.[2] The magistrate judge's ruling was based on allegations suggesting that Plaintiff may have been denied needed medical treatment — in Plaintiff's words, "I can not get a doctor to g[i]ve me the pain medications and treatment like I s[h]ould have." (Doc. 16, p. 5). The magistrate judge recommended the dismissal of many other proposed claims, including claims against Doe defendants, state entities, and other inmates. The Court adopted that recommendation. (Docs. 33, 63).

Proceedings then focused on whether Plaintiff had exhausted his administrative remedies as required by the PLRA, and more precisely, on whether the prison grievance process was "available" to Plaintiff given his possible mental deficiencies. *Ross v. Blake*,

---

[1] 28 U.S.C. § 1915(e)(2) (in forma pauperis); 28 U.S.C. § 1915A (screening); 42 U.S.C. § 1997e(c) (suits by prisoners with respect to prison conditions)

[2] *See* (Doc. 94, p. 6, n.5).

2

578 U.S. 632, 643–44 (2016) (construing 42 U.S.C. § 1997e(a)). The Court determined that Plaintiff had the mental capacity to understand and follow the prison grievance rules, including the rule that grievances should concern only a single issue:

> The specific finding of this Court is that Plaintiff, despite his eighth-grade special education, could have subjectively understood the single-issue rule mandated by the grievance procedure. This finding is based on the fact that Plaintiff filed a lawsuit; complied with the guidelines for proceeding *in forma pauperis*; read and understood the Federal Rules of Civil Procedure (which this Court admits are not easily understood by some practiced attorneys); sought leave to amend his complaint; followed the direction of the Magistrate Judge to recast his complaint; routinely inquired about the status of his case; and properly filed a response to Defendant's objections to the Recommendation.
>
> (Doc. 77, p. 17)

**(2)     Appellate Proceedings**

On appeal, the Eleventh Circuit Court of Appeals affirmed the Court's ruling that Plaintiff had a sufficient mental capacity to understand and follow the single-issue grievance rule. (Doc. 94, p. 17) ("we agree with the district court that the pleadings filed in this case demonstrate Geter's ability to understand the grievance system's one-issue rule"). Hence, the Court of Appeals did not need to reach the issue of whether *Ross* contains an exhaustive description of circumstances in which a prison grievance process is unavailable.

The Eleventh Circuit remanded, however, for an inquiry under *Ross*'s third unavailability factor into whether a prison official, Mary Danzy, misled Plaintiff by

negligently or incorrectly filling out his prison grievance form or by giving Plaintiff bad advice. *See* (Doc. 94, pp. 21–22). At present, the record reveals only the existence of two substantively overlapping grievances dated April 27 and April 28, 2016, the first of which is barely legible and the second of which is legible and looks to have been drafted by a different hand. (Doc. 10-1, p. 2; Doc. 45-2, p. 41). Both of these grievances appear to bear Mary Danzy's signature.

## THE APPOINTMENT OF COUNSEL

The Court of Appeals suggested, in a footnote to its order of remand, that "the district court may wish to appoint counsel for ease of resolution." (Doc. 94, p. 5, n.3). Although the ACLU stepped in to represent Plaintiff on appeal, that organization limited the scope of its representation to appellate proceedings, and lawyers for the ACLU declined to continue their representation of Plaintiff during remand proceedings in this Court. (Doc. 99). The ACLU did make efforts to assist the Court in recruiting new attorneys to represent Plaintiff at the trial level. Any "appointment" of counsel in this would essentially be on a *pro bono* basis. With the assistance of the ACLU, the magistrate judge was initially able to find voluntary or *pro bono* counsel for Plaintiff. *See* (Doc. 108). Those attorneys were unable, however, to obtain cooperation from Plaintiff and were allowed to withdraw. *See* (Doc. 110, p. 1). The Court did not pursue appointment of counsel further. District courts have extremely limited funds with which to appoint counsel in civil actions, and the Court has little or no authority to dragoon lawyers into service. *See, e.g.*, *Mallard v. United States Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989) ("§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel").

**DISMISSAL**

The Defendant's motion to dismiss cites Plaintiff's failure to participate in his deposition as a basis for dismissal. As discussed below, the Defendant's motion is proper, and additionally, a dismissal is independently warranted under 28 U.S.C. § 1915(e)(2), which authorizes the Court to dismiss a case "at any time" for failure to state a claim.

**(a)**     **Failure to Participate in Deposition**

On remand, Defendant abandoned his exhaustion defense and elected to proceed with discovery and litigation on the merits. As part of the discovery process, Defendant sought to depose Plaintiff. When Plaintiff refused to attend a previously scheduled deposition, the Defendant filed his first motion to dismiss (Doc. 145), which the Court denied. (Docs. 147, 156). The Court explained that Plaintiff's intransigence was improper but did not yet rise to the level of a "clear pattern of delay or willful conduct." *Betty K. Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005). In lieu of dismissal, the Court granted Defendant's motion to compel Plaintiff to participate in his deposition, instructing Plaintiff that his failure "to sit for and to meaningfully participate in his deposition" would "result in the dismissal of this action." (Doc. 147, p. 2).

The Defendant has now filed a second motion to dismiss accompanied by attachments which show that Plaintiff ignored this Court's instructions by once again refusing to attend and participate in a noticed deposition. *See* (Doc. 162-3, p. 6). Plaintiff's established pattern of conduct now demonstrates a "flagrant disregard for the court and the discovery process," rendering a dismissal appropriate under Rule 37(b) of the Federal Rules of Civil Procedure. *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 481 (11th Cir.

1982). Plaintiff's refusal to comply with this Court's orders, along with Plaintiff's frustration of the process for resolving his claims on the merits, also warrants a dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). By refusing to be deposed and take the opportunity to explain his claims in his own words, Plaintiff has effectively abandoned his action.

Although a resolution of this action on the merits would have been preferable, Plaintiff's refusal to participate in the discovery process, along with Plaintiff's failure to obey this Court's orders and instructions, has thwarted that prospect. Because dismissal is now an appropriate discovery sanction, and because Plaintiff's intransigence has rendered ordinary litigation impossible, the Court grants the Defendant's motion to dismiss.

**(b)** <u>**Failure to State a Claim**</u>

Although Plaintiff's refusal to participate in discovery is alone sufficient to warrant the dismissal of this action, a dismissal is also warranted because Plaintiff fails to state claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment.

As a species of tort liability, Section 1983 authorizes suit for Constitutional wrongs against alleged wrongdoers. In the medical context, "to state a cognizable claim, a prisoner must allege acts or omissions" by a purported wrongdoer that are "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). That is, the prisoner must not only show an objectively serious medical need, but he must also show (1) "subjective knowledge" by the purported wrongdoer of a "risk

of serious harm," along with (2) "disregard of that risk" by (3) "conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

Initially, proceedings in this action focused on whether Plaintiff had satisfied the PLRA's exhaustion requirement rather than on the sufficiency of factual allegations. As observed by the magistrate judge in screening this action under Section 1915A, Plaintiff's varied filings address a wide range of alleged wrongs, including inmate-on-inmate rape and a possible inmate-on-inmate assault that resulted in Plaintiff's undergoing a craniotomy procedure. Given the serious nature of some of Plaintiff's allegations, the magistrate judge erred on the side of caution and allowed this action to survive the screening process.

Although the complaint was sufficient to survive the liberal screening process and warrant further factual development, two overlapping deficiencies render Plaintiff's pleadings inadequate. First, Plaintiff has not identified which of his many possible medical needs relate to Defendant Akunwanne. Although Plaintiff's allegations, liberally construed, may permit the reasonable inference that he suffers or has suffered from objectively serious medical needs arising from injuries relating to rape, assault, or a craniotomy surgical procedure, Plaintiff fails to allege that Defendant Akunwanne was subjectively aware of those medical needs. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994) ("Eighth Amendment suits against prison officials must satisfy a 'subjective' requirement").

Second, Plaintiff has not identified any "acts or omissions" by Defendant Akunwanne that evidence a wrongful disregard of risk. *Estelle*, 429 U.S. at 106. Even if the Court assumes that Defendant Akunwanne was subjectively aware of Plaintiff's

7

symptoms of "severe headache[s]," "trouble talking," and "tingling on one side of my body," (Doc. 16, p. 5), Plaintiff has not described, in even barebones fashion, whether Defendant Akunwanne acted wrongfully by, for example, withholding treatment altogether or by providing the wrong kind of treatment. Indeed, because Plaintiff has failed to provide a rough chronology of events or any description of his course of medical treatment, the Court is unable even to draw inferences in Plaintiff's favor.

Section 1983 does not authorize a federal lawsuit any time a prisoner seeks medical treatment — that is, anytime a prisoner wants "medications and treatment like I s[h]ould have." (Doc. 16, p. 5). Plaintiff has failed to allege facts to support a plausible theory of deliberate indifference by Defendant Akunwanne, and accordingly, a *sua sponte* dismissal is alternatively appropriate under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.[3]

## CONCLUSION

For the reasons discussed herein, the Defendant's motion to dismiss (Doc. 162) is **GRANTED**, and this action is hereby **DISMISSED without prejudice**.

**SO ORDERED**, this 29th day of March, 2022.

s/ Tilman E. Self, III_____
**Tilman E. Self, III, Judge**
**United States District Court**

---

[3] Ordinarily, the Court would dismiss *sua sponte* with leave to amend. *Thomas v. Farmville Mfg. Co., Inc.*, 705 F.2d 1307, 1307–08 (11th Cir. 1983) ("A grant of leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim"). However, because a dismissal is independently warranted based on Plaintiff's repeated failure to participate in his deposition, any curative amendment by Plaintiff would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing "futility of amendment" as grounds for denying leave to amend).